IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**DEVON FRYE,**

    **Plaintiff,**

**v.**                                                        **Civil Action No. 3:22cv655**

**NELSON SMITH,** *et al.*,

    **Defendants.**

## MEMORANDUM OPINION

Devon Frye, an individual detained in the Virginia Center for Behavioral Rehabilitation ("VCBR") as a sexually violent predator ("SVP"), filed this 42 U.S.C. § 1983 action.[1] Mr. Frye names as Defendants: Nelson Smith, the Commissioner for the Department of Behavioral Health and Developmental Services ("DBHDS"); Carla Zarrella, the Director of Offender Sexually Violent Predator Services; Dr. William McKenna, a licensed clinical psychologist and a forensic evaluator at VCBR; Dr. Daniel Mondaldi, the Forensic Director at VCBR: and, Samantha Hawes, the Grievance Coordinator at the VCBR ("Defendants"). (ECF No. 1, at 1.) The matter is before the Court on the Motion for Summary Judgment filed by Defendants (ECF No. 33.)

---

[1] That statute provides, in pertinent part:

    Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.

## I. Background on SVP Confinement

Before addressing Mr. Frye's claims, it is appropriate to provide some context for Virginia's procedure for the commitment and treatment of SVPs. Initially,

> Virginia's Sexually Violent Predators Act ("Act") requires proof "by clear and convincing evidence" that a respondent is an SVP before he may be civilly committed. Code § 37.2-908(C). After the respondent has been adjudicated an SVP, he may be either "committed" or subject to an "alternative[] to commitment," such as conditional release pursuant to a conditional release plan.

*Benefield v. Virginia*, 908 S.E.2d 127, 131 (Va. Ct. App. 2024) (alteration in original) (quoting Va. Code § 37.2-908(D), (E)). After an individual's initial confinement as a SVP,

> An annual review is required to determine if there is a "need for secure inpatient treatment." Va. Code § 37.2-910(A). The court initiates the annual review by ordering and then considering an evaluation. Unless the Commonwealth recommends release, the Commonwealth bears the burden to prove by clear and convincing evidence that "the respondent remains a sexually violent predator." Va. Code § 37.2-910(C). The court can order the respondents release if [it] determines he is no longer an SVP, but "[i]f the court finds that the respondent remains a sexually violent predator, it shall order that he remain in the custody of the Commissioner for secure inpatient hospitalization and treatment or that he be conditionally released. To determine if the respondent shall be conditionally released, the court shall determine if the respondent meets the criteria for conditional release set forth in § 37.2-912." Va. Code § 37.2-910(D) (listing eight specific factors as well as any other factors that the court deems relevant).

*Givens v. Wilson*, No. 1:22CV943 (TSE/JFA), 2023 WL 2505488, at *2 (E.D. Va. Mar. 14, 2023) (second alteration in original).

## II. Summary of Relevant Facts and Allegations

On February 11, 2004, Mr. Frye was found guilty of two counts of aggravated sexual assault involving two minors. (ECF No. 1-1, at 11, 13–14.) On September 9, 2021, after he completed the sentence related to those charges, following a court order and pursuant to section 37.2-900 of the Virginia Code, Mr. Frye was committed to VCBR as a SVP. (ECF No. 1, at 3.)

2

Following his commitment, Mr. Frye was given a series of initial psychological and psychosocial assessments. (ECF No. 1, at 3.)

On February 17, 2022, Mr. Frye wrote to Commissioner Smith expressing "his concerns about the accuracy of his sexually violent predator evaluations and expressing why he didn't believe he met the criteria to be declared an SVP." (ECF No. 1, at 3.) On February 23, 2022, Director Zarrella respond to Mr. Frye's letter and stated, in pertinent part:

> Thank you for sharing this information regarding your case. Your concerns appear to be with the accuracy of your SVP evaluations and if you meet the criteria for SVP as outlined in the Code of Virginia. Unfortunately, only the court of jurisdiction can address these concerns. I suggest you contact your attorney so that he or she can bring these issues to the attention of the court on your behalf.

(ECF No. 1-1, at 1.)

On March 1, 2022, Mr. Frye wrote another similar letter, and on March 7, 2022, Director Zarrella provided a similar response. (ECF No. 1-1, at 2.)

On April 8, 2022, Mr. Frye wrote to Director "Zarrella to reiterate his previously documented concerns and to request a 'proper' mental health evaluation." (ECF No. 1, at 4.) On April 12, 2022, Director Zarrella responded:

> You appear to still have concerns with the accuracy of your initial SVP evaluation. Also, regarding the annual review process, you request that I "correct this improper application of the SVPA before it results in another erroneous evaluation being conducted . . . ."
>
> You were found to meet the criteria for SVP and civilly committed by the court of jurisdiction. DBHDS does not have the authority to change the ruling of the court and is required to comply with the court's orders. If you have any concerns regarding your initial evaluation or SVP status, I suggest you contact your attorney so that they can bring these issues to the attention of the court on your behalf.
>
> As for the annual review process, DBHDS is required to complete those reports in accordance with the Code of Virginia.

(ECF No. 1-1, at 3.)

On June 11, 2022, Dr. McKenna "submitted his written report of the annual review evaluation he conducted on the Plaintiff." (ECF No. 1, at 4.) Dr. Montaldi "reviewed and approved the report written for the annual review hearing that Dr. William McKenna conducted." (ECF No. 1, at 5.)

### III. Mr. Frye's Claims

Based on the foregoing allegations, Mr. Frye raises the following legal claims:

Claim 1     Commissioner Smith "violated the Plaintiff's Fourteenth Amendment[2] constitutional rights by being callously indifferent to the fact that the Plaintiff had not received procedural due process within Va. Code 37.2-900. . . . In order for the Plaintiff to be involuntarily civilly committed he must receive procedural due process and a proper mental health evaluation is mandatory." (ECF No. 1, at 6.)

Claim 2     Director Zarrella "violated the Plaintiff's Fourteenth Amendment rights . . . by being callously indifferent[] to the Plaintiff not receiving adequate procedural due process, and . . . [failing to ensure] the Plaintiff received equal protection[3] under the law. . . . Defendant Zarrella's conscious disregard for Mr. Frye's rights and liberty not only allowed her not to intercede and investigate his initial commitment evaluation, it also caused her to allow a doctor at VCBR to perform yet another improper and illegal evaluation." (ECF No. 1, at 6–7.)

Claim 3     Dr. McKenna "violated the Plaintiff's Fourteenth Amendment right to equal protection under the law by conducting an annual review that deviated from the proper standard of care. . . . The Plaintiff is entitled to the same annual review guidelines as other civilly committed individuals under Va. Code 37.2-900. Defendant McKenna blatantly deviated from those guidelines when he found that the Plaintiff <u>remains</u> an SVP based on two paraphilic disorders that he was never <u>found</u> to be an SVP for. Defendant McKenna violated the Plaintiff's Fourteenth Amendment rights to substantive due process by failing to provide proper medical care in the form of using the professional judgment standard by not rendering a

---

[2] "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.

[3] "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

4

|  |  |
|---|---|
|  | proper mental health evaluation during the annual review assessment. Defendant McKenna also violated the Plaintiff's First Amendment[4] right to be free from retaliation. Although Dr. McKenna is entitled to his opinion, the Plaintiff asserts that Dr. McKenna labeling the Plaintiff's peaceful protest of his constitutional[ly] protected rights as <u>lifestyle impulsivity</u>, <u>poor cognitive problem-solving</u>, and <u>grievance thinking/hostility</u> are indicative of his disapproval and dislike for the Plaintiff filing complaints and grievances." (ECF No. 1, at 7–8 (internal citation omitted).) |
| Claim 4 | Dr. Montaldi "violated the Plaintiff's Fourteenth Amendment rights to due process and equal protection under the law. The Defendant didn't ensure that the Plaintiff received an annual review assessment that comports to Va. Code 37.2-910." (ECF No. 1, at 9.) |
| Claim 5 | "Defendant Samantha Hawes violated the Plaintiff's Fourteenth Amendment rights to have due process by refusing to submit his formal complaints. . . . Defendant Hawes should have processed the Plaintiff's formal complaints up the chain of command." (ECF No. 1, at 10.) |

Mr. Frye demands monetary damages, declaratory and injunctive relief. (ECF No. 1, at 10)

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. Here, in Claim 5, Mr. Frye sues Samantha Hawes, the grievance coordinator, for failing to properly process his grievances and complaints. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). Accordingly, Claim 5 will be DISMISSED.

---

[4] "Congress shall make no law . . . abridging the freedom of speech . . . ." U.S. Const. amend. I.

## IV. Standard for Summary Judgment

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility of informing the Court of the basis for the motion and identifying the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## V. *Heck v. Humphrey*

Although not explicitly stated, Mr. Frye obviously seeks to impugn and invalidate his civil detention. This notion, that Mr. Frye can vacate or alter his civil detention and obtain monetary damages and injunctive relief for his purportedly improper detention, through a civil lawsuit "is legally frivolous under *Heck v. Humphrey*, 512 U.S. 477 (1994), and related cases." *Payne v. Virginia*, No. 3:07CV337, 2008 WL 1766665, at *2 (E.D. Va. Apr. 17, 2008). In *Heck*, the Supreme Court emphasized that civil tort actions are "not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. The Supreme Court then held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id.* at 486–87 (internal footnote omitted). The Supreme Court then required that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it

would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

In *Edwards v. Balisok*, the Supreme Court extended *Heck* to civil rights actions that do not directly challenge confinement, but instead contest procedures which necessarily imply unlawful confinement. *See* 520 U.S. 641, 646 (1997). The Supreme Court has explained that *Heck* and its progeny teach that:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

This Court (and others) have concluded that *Heck* applies to civil commitment proceedings and bars a detainee's "claim that is predicated on his assertion that his civil detention is improper because he is not an SVP" or that he is improperly detained. *Cummins v. Land*, No. 3:21CV556, 2022 WL 17539103, at *9 (E.D. Va. Dec. 8, 2022) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005)); *see also Bell v. Raoul*, 88 F.4th 1231, 1234 (7th Cir. 2023) (concluding *Heck* applies to SVP proceedings (citing *Fetzer v. Secretary, Fla. Dep't of Children & Families*, No. 20-11139-E, 2020 WL 5625172, at *1 (11th Cir. Aug. 13, 2020); *Thomas v. Eschen*, 928 F.3d 709, 711 (8th Cir. 2019); *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1140–41 (9th Cir. 2005); *Banda v. New Jersey*, 134 F. App'x 529, 530 (3d Cir. 2005); *Whitehead v. Bush*, 62 F. App'x 912, 913 (10th Cir. 2003))).

The core of Mr. Frye's theory of recovery in Claims 1 through 4 is that Defendants Smith, Zarrella, McKenna, and Montaldi violated his constitutional rights and failed to follow the appropriate procedures during his annual review process. Mr. Frye fails to articulate, and the

Court fails to discern how Mr. Frye could prevail on such claims and not simultaneously invalidate his current detention. *See Thomas*, 928 F.3d at 711 (concluding that plaintiff's wrongful commitment claims were barred by *Heck*). Because the initial judgment and subsequent state court decisions that led to that detention still stand, Claims 1 through 4 are barred by *Heck*. *See Banda*, 134 F. App'x at 530 (concluding civil detainee's claims for damages and injunctive relief were barred by *Heck* and dismissing claims without prejudice). "The proper means of seeking immediate release from confinement, or seeking an earlier release from confinement, is through a petition for writ of habeas corpus." *Id.* (citing *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973)). Accordingly, Claims 1 through 4 will be DISMISSED WITHOUT PREJUDICE.

### IV. Conclusion

Claim 5 will be DISMISSED WITH PREJUDICE. Claims 1 through 4 will be DISMISSED WITHOUT PREJUDICE. Mr. Frye's Motion for Default Judgment (ECF No. 31) will be DENIED. The Motion for Summary Judgment (ECF No. 33) will be GRANTED. The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date: 4/30/2025
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge